[No. B225058. Second Dist., Div. Five. Sept. 27, 2011.]

HILLSIDE MEMORIAL PARK AND MORTUARY et al., Plaintiffs and Respondents, v.
GOLDEN STATE WATER COMPANY et al., Defendants and Appellants;
WATER REPLENISHMENT DISTRICT OF SOUTHERN CALIFORNIA et al., Interveners and Appellants.

536

## COUNSEL

Brownstein Hyatt Farber Schreck, Lisabeth D. Rothman, Stephanie Osler Hastings and Russell M. McGlothlin for Defendant and Appellant Golden State Water Company.

Carmen A. Trutanich, City Attorney, Richard M. Brown and Julie C. Riley, Deputy City Attorneys, for Defendant and Appellant City of Los Angeles.

Cal Saunders, City Attorney, for Defendant and Appellant City of Inglewood.

John L. Fellows III, City Attorney, and Patrick Q. Sullivan, Assistant City Attorney, for Defendant and Appellant City of Torrance.

Robert V. Wadden, City Attorney, for Defendant and Appellant City of Manhattan Beach.

Robert E. Shannon, City Attorney, J. Charles Parkin, Principal Deputy City Attorney; Lagerlof, Senecal, Gosney & Kruse and William F. Kruse for Defendant and Appellant City of Long Beach.

Alston & Bird, Edward J. Casey, Tammy L. Jones; Meyers, Nave, Riback, Silver & Wilson, Deborah J. Fox and James M. Casso for Intervener and Appellant Water Replenishment District of Southern California.

Lemieux & O'Neill and Steven O'Neill for Intervener and Appellant West Basin Municipal Water District.

SmithTrager, Susan M. Trager and Laurel E. Adcock for Plaintiff and Respondent Hillside Memorial Park and Mortuary.

Sedgwick, Detert, Moran & Arnold, Curtis D. Parvin, Douglas E. Wance and Douglas J. Collodel for Plaintiff and Respondent Tesoro Refining and Marketing Company.

OPINION

KRIEGLER, J.—This is an appeal by the parties moving to amend a judgment (the moving parties)[1] dating back to 1961 imposing a "physical solution"[2] on the West Coast Groundwater Basin (the West Basin). The proposed amendment involved utilization of "dewatered" acreage in the West Basin, which was not part of the physical solution in the 1961 judgment. The trial court ruled in favor of two parties opposing the amendment to the judgment (the opposing parties),[3] reasoning that language in the proposed amendment included environmental findings that would potentially be inconsistent with any environmental impact report (EIR) later prepared under the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.).

The first issue in this appeal is whether the jurisdiction retained by the trial court in the 1961 judgment imposing the physical solution extends to utilization of the dewatered portion of the West Basin. In light of language in a 1980 amendment to the 1961 judgment, we hold the trial court did have jurisdiction to consider the motion to amend the judgment.

The second issue is whether the trial court erred in denying the motion to amend the judgment, without holding an evidentiary hearing, out of concern that certain express and implied findings in the proposed amendment might ultimately be inconsistent with any later EIR under CEQA. We conclude that under California's constitutional approach to water law, if the parties could not agree on a resolution of the issue presented in the motion to amend the

---

[1] The moving parties are the Golden State Water Company, Water Replenishment District of Southern California (WRD), West Basin Municipal Water District, and the Cities of Los Angeles, Inglewood, Manhattan Beach, and Long Beach.

[2] "A physical solution is an equitable remedy designed to alleviate overdrafts and the consequential depletion of water resources in a particular area, consistent with the constitutional mandate to prevent waste and unreasonable water use and to maximize the beneficial use of this state's limited resource." (*California American Water v. City of Seaside* (2010) 183 Cal.App.4th 471, 480 [107 Cal.Rptr.3d 529].)

[3] The parties opposing the motion to amend are Tesoro Refining and Marketing Company and Hillside Memorial Park and Mortuary.

judgment, the trial court had a duty to admit evidence, and if necessary, suggest a physical solution for use of dewatered acreage. (*City of Lodi v. East Bay Mun. Utility Dist.* (1936) 7 Cal.2d 316, 341 [60 P.2d 439].) We further hold the trial court erred in requiring that the moving parties obtain EIR's under CEQA prior to litigating a physical solution to the issue of dewatered acreage. The express language of Water Code section 10753[4] prohibited the moving parties from adopting the storage plan without court approval because of the existing court order imposing a physical solution on the West Basin.

We therefore reverse the order denying the motion to amend the judgment and remand the matter to the trial court for a full hearing on a physical solution to the water storage issue.

*California's Approach to Water Rights*

■ Since 1928, California's public policy is to foster the reasonable beneficial use of water. (Cal. Const., art. X, § 2, formerly art. XIV, § 3; Wat. Code, § 100; *City of Lodi v. East Bay Mun. Utility Dist., supra,* 7 Cal.2d at pp. 337–338.) "It is hereby declared that because of the conditions prevailing in this State the general welfare requires that the water resources of the State be put to beneficial use to the fullest extent of which they are capable, and that the waste or unreasonable use or unreasonable method of use of water be prevented, and that the conservation of such waters is to be exercised with a view to the reasonable and beneficial use thereof in the interest of the people and for the public welfare. . . . This section shall be self-executing, and the Legislature may also enact laws in the furtherance of the policy in this section contained." (Cal. Const., art. X, § 2.) The policy protects actual and prospective reasonable beneficial uses. (*City of Barstow v. Mojave Water Agency* (2000) 23 Cal.4th 1224, 1241–1242 [99 Cal.Rptr.2d 294, 5 P.3d 853]; *Tulare Dist. v. Lindsay-Strathmore Dist.* (1935) 3 Cal.2d 489, 525 [45 P.2d 972].)

■ The moving parties sought to store water in underground dewatered storage spaces of the West Basin. Section 1242 provides: "The storing of water underground, including the diversion of streams and the flowing of water on lands necessary to the accomplishment of such storage, constitutes a beneficial use of water if the water so stored is thereafter applied to the

---

[4] Water Code section 10753 provides in part as follows: "(a) Any local agency, whose service area includes a groundwater basin, or a portion of a groundwater basin, *that is not subject to groundwater management pursuant to other provisions of law or a court order, judgment, or decree,* may, by ordinance, or by resolution if the local agency is not authorized to act by ordinance, adopt and implement a groundwater management plan pursuant to this part within all or a portion of its service area." (Italics added.) All statutory references are to the Water Code unless otherwise stated.

beneficial purposes for which the appropriation for storage was made." Subsurface storage, which is akin to a natural reservoir, falls within the broad constitutional provision governing all the water uses in this state. (*Central and West Basin Water Replenishment Dist. v. Southern Cal. Water Co.* (2003) 109 Cal.App.4th 891, 905 [135 Cal.Rptr.2d 486]; see also § 105.)[5] "[T]he storage of water for the purposes of flood control, equalization and stabilization of the flow and future use, is included within the beneficial uses to which the waters of the rivers and streams of the state may be put within the intent of the constitutional amendment." (*Meridian, Ltd. v. San Francisco* (1939) 13 Cal.2d 424, 449 [90 P.2d 537].)

*The West Basin Judgment*

The West Basin is a groundwater basin which includes 101,000 acres in Los Angeles County, located to the west of the Central Groundwater Basin (Central Basin). The two basins are separated by a geologic fault but are hydrogeologically connected. The West Basin is partially replenished by groundwater underflow from the Central Basin. The West Basin supplies a portion of the water to about 1.35 million people; the two basins combined supply more than 4 million people with their daily water.

Prior to 1959, population growth in urban areas increased groundwater pumping to meet increased demands. Pumping for the West Basin reached levels as high as or more than double the amount that California's Department of Water Resources considered to be safe to withdraw on an annual basis without causing harm to the basin's water supply. The drop in groundwater levels resulted in seawater intrusion, increased pumping costs, and the risk of loss for drinking water storage space. The basins were in an "overdraft" condition, meaning the quantity of water pumped out of the basin exceeded the amount of natural replenishment.

Efforts to address the overdraft issue in the West Basin culminated with a lawsuit filed on October 24, 1945, by the California Water Service, the Palos Verdes Water Companies, and the City of Torrance against over 600 named and fictitious defendants. (See *California Water Service Co. v. Edward Sidebotham & Son* (1964) 224 Cal.App.2d 715, 721 [37 Cal.Rptr. 1].) The WRD, one of the moving parties in this case, was formed in 1959 pursuant to section 60000 et seq. to be the public agency permanently charged with replenishing the groundwater pumped out of the basins by various entities. In the early 1960's, the courts adjudicated issues concerning the overdrafts from

---

[5] Section 105 provides: "It is hereby declared that the protection of the public interest in the development of the water resources of the State is of vital concern to the people of the State and that the State shall determine in what way the water of the State, both surface and underground, should be developed for the greatest public benefit."

the basins which resulted in two court judgments (the "Central Basin Judgment" and the "West Basin Judgment").

The West Basin Judgment, entered on August 22, 1961, was a stipulated judgment between the parties owning more than 80 percent of the prescriptive rights in the basin. The parties agreed to allocate the water, restrict total production, and provide for an exchange pool arrangement.

The West Basin Judgment does not contain provisions relating to storage. The trial court reserved jurisdiction and continued supervision over the West Basin Judgment through the Department of Water Resources acting as "Watermaster." "The Court hereby reserves continuing jurisdiction, and upon application of any party hereto having an Adjudicated Right or upon its own motion, may review (1) its determination of the safe yield of the Basin, or, (2) the Adjudicated Rights, in the aggregate, of all of the parties as affected by the abandonment or forfeiture of any such rights, in whole or in part, and by the abandonment or forfeiture of any such rights by any other person or entity, and, in the event of material change be found, to adjudge that the Adjudicated Right of each party shall be ratably changed . . . ." Paragraph XII of the 1961 judgment states: "The Court further reserves jurisdiction so that at any time and from time to time, upon its own motion or upon application of any party hereto having an Adjudicated Right, . . . to make such modifications of or such additions to, the provisions of this judgment, or make such further order or orders as may be necessary or desirable for the adequate enforcement, protection or preservation of the rights of such parties as herein determined."

The West Basin Judgment has been amended on multiple occasions since 1961. Pertinent to this case, the West Basin Judgment was amended on March 21, 1980 (the 1980 judgment), to deal with a series of problems. The following items were included in the 1980 judgment: carryover rights when a party did not extract all of its allocated water during a year; sanctions to be imposed when a party extracts water in excess of its annual allocation; carryover rights for water not extracted in portions of 1976 through 1978; exchange of "supplemental water" that was not part of a party's extraction rights; the authority of the Watermaster to allocate the use of the supplemental water based on price considerations; and a pricing and dispute mechanism which involved the Watermaster and potential judicial review.

The 1980 judgment provides a mechanism for replenishing water in an emergency,[6] by placing restrictions on any replenishment agreement and

---

[6] Paragraph VII of the 1980 judgment states: "During an actual or threatened temporary shortage of the imported water supply to West Basin, Replenishment District may, by resolution, determine to subsequently replenish the Basin for any water produced in excess of a

requiring consideration of local hydrological conditions and a need to protect the basin from seawater intrusion.[7] The 1980 judgment goes beyond the issue of extraction rights by imposing a physical solution which regulates carryover rights, imposes sanctions for overproduction, provides supplemental water which could be placed in an exchange pool, and grants the Watermaster extensive rights to administer and allocate supplemental prices. This modification to the judgment also addresses the issue of a temporary water shortage and the need to protect the basin from seawater intrusion and ensure consideration of local hydrologic conditions.

Paragraph XV of the 1980 judgment materially expands the equitable power of the trial court to adjudicate subterranean water rights by making the following italicized changes to the 1961 judgment: "The Court further reserves jurisdiction . . . to make such modifications of or such additions to, the provisions of this judgment, or make such further order or orders as may be necessary or desirable for the adequate enforcement, protection or preservation of the *Basin and of* the rights of such parties as herein determined." The 1980 judgment adds the power of the trial court to take necessary steps to protect and preserve the West Basin in addition to the rights of the parties as was specified in the 1961 judgment.

*The 2009 Motion to Amend the Judgment*

The moving parties filed a motion to amend and restate the judgment on May 4, 2009. According to the motion, the West Basin has approximately 300,000 acre-feet of space that is "dewatered" or unused. The motion sought to amend and restate the judgment to allow 120,000 acre-feet of the dewatered space to be utilized for water storage.

The moving parties began drafting plans to develop a storage program that is consistent with the California Constitution's mandate that all water resources be put to beneficial use to the fullest extent and for the greatest public

---

party's adjudicated rights hereunder, within a reasonable period of time, pursuant to agreements with such parties (to a maximum of 10,000-acre feet), under the terms and conditions hereinafter set forth."

[7] Paragraph VII of the 1980 judgment states in terms of protection of the basin: "(b) All such agreements shall be subject to the following requirements, and such reasonable others as Replenishment District's Board of Directors shall require: [¶] (1) They shall be of uniform content except as to the quantity involved, and any special provisions considered necessary or desirable with respect to local hydrological conditions or good hydrologic practice. [¶] (2) They shall be offered to all water purveyors, excepting those which Replenishment District's Board of Directors determine should not over-pump because such over-pumping would occur in undesirable proximity to a sea water barrier project designed to forestall sea water intrusion, or within, or in undesirable proximity to, an area within West Basin wherein ground-water levels are at an elevation where over-pumping is, under all circumstances, then undesirable."

benefit. Several parties, including the WRD, reached a compromise solution following years of mediation, including participation and input from the Director of Water Resources, regarding the use of the storage space. A majority of the parties holding adjudicated rights in the West and Central Basins brought companion motions proposing amendment of the judgments for their respective basins to establish a comprehensive groundwater storage program to be administered by a new court-appointed Watermaster.[8]

The moving parties and other basin water right holders executed a stipulation agreeing to seek amendment of the judgment in order to avoid the time, expense and uncertainty of renewed litigation or legislative efforts regarding the quantity of water flowing beneath and between the two basins, and establish uniformity of the replenishment assessment imposed by the WRD on the production of groundwater from the basins.

Paragraph 4 of the stipulation provides: "The Amendments are necessary to assure the State of California and other local agencies that a durable legal framework is in place to provide for the effective management of the West Basin." In the event the motion was granted, the parties agreed, for a 20-year period, not to seek further amendment in a manner inconsistent with the stipulated order. The parties also agreed not to seek a modification of the replenishment assessment in a manner that would result in the lack of uniformity between the two basins, or seek to quantify, adjudicate, or otherwise determine the amount of water flowing beneath or between the basins. The stipulation would be terminated if either the West Basin or Central Basin motion to amend were denied.

The proposed amendment to the West Basin Judgment included a number of substantive changes regarding a new storage program which would facilitate organized and coordinated use of underground storage space for maximum beneficial use. First, the amended judgment would declare that 120,000 acre-feet of the total of approximately 300,000 acre-feet of dewatered storage space may be used. A party may store up to 200 percent of the party's adjudicated rights, if space is available. The available dewatered space would have two functional categories—the "available storage capacity" and the "basin operating reserve." The "available storage capacity" would contain 70,900 acre-feet and be made available for various forms of storage projects

---

[8] The Central Basin involves some of the same parties as the West Basin. Concurrently with this motion, parties to the Central Basin Judgment filed a motion to amend and restate the Central Basin Judgment. (*Central and West Basin Water Replenishment Dist. v. Adams* (Super. Ct. Los Angeles County, No. 786656).) The trial court denied the motion for lack of jurisdiction. The decision is pending on appeal in Division Eight of this appellate district. (*Water Replenishment Dist. of Southern California v. Central Basin Municipal Water Dist.* (B226743).)

by water users. The "basin operating reserve" would reserve 149,100 acre-feet to serve a replenishment function, including temporary storage projects when the water replenishment district did not need the space for the replenishment function.

Second, the proposed amendments would divide available storage capacity into three categories of storage—individual storage accounts, a community storage pool, and regional storage projects. The individual storage account would allow each party (without the need for any prior review or approval) to store an amount of water up to 40 percent of the party's allowed pumping allocation. The community storage pool would allow the parties to store water not in excess of 35,500 acre-feet. The parties must vacate the storage space periodically and refill it, promoting a desirable cycling of water within the storage space. The regional storage projects would have 9,600 acre-feet for special projects approved by the Watermaster to store water for the benefit of the region as a whole.

Third, the proposed amendments would allow a "carryover conversion," allowing a party to store water by directly importing it or electing to convert any unused one-year carryover water to stored waters. The conversion would require the party to pay a replenishment assessment for the stored water to ensure the replacement water is purchased to offset the later extraction. The proposed amendments would use a concept similar to "in lieu" replenishment whereby the water replenishment district paid a water rights holder to not produce groundwater and instead take water from surface delivery sources. The proposed amendments would increase water supplies of stored water through "in lieu" storage.

Seven additional proposed amendments to the judgment involved the following issues: establishing a basin operating reserve for operation of the WRD's replenishment program; the appointment of a new Watermaster with three different functions (a water rights panel to enforce the pumping aspects of the judgment, a storage panel to review proposals for regional storage and to enforce the storage program, and an administrative body to maintain records and administer the review process for certain storage projects); the establishment of limits on extractions; allowance for permanent extraction right increases when the parties cooperatively develop a program that permanently adds additional water to the basin; allowing the transfer of storage rights between parties to the judgment in a like manner as the water rights themselves, including transfer of the stored water to the Central from the West Basin; and uniformity in the replenishment assessment across the two basins.

Additionally, the proposed amendments included periodic review to evaluate the success of the storage program and reports to the trial court, with the

program subject to a complete reevaluation by the court at the end of 20 years. The court would retain jurisdiction to effectuate the judgment's purposes.

*Opposition and Objections to the Motion to Amend the Judgment*

Hillside Memorial Park and Mortuary filed an opposition to the motion to amend the judgment. Tesoro Refining and Marketing Company filed objections to the motion. Both opposing parties raised various issues. As pertinent to this appeal, the opposing parties argued the trial court did not have subject matter jurisdiction to consider the merits of the motion, and the motion failed to comply with CEQA.

*Denial of the Motion to Amend the Judgment*

The trial court denied the motion to amend the judgment in a seven-page order without holding an evidentiary hearing. The court noted that the proposed amended judgment included the following language: " 'Because of the restrictions and Basin management provisions set forth herein, the use of the [dewatered space] will not materially encroach into the vadose zone or create an unreasonable risk of harm that may be associated with high groundwater level mobilizing contaminants or inundating structures.' " The court was not willing to sign an order containing this language, because to do so would abrogate the statutory procedures imposed on public agencies, such as the WRD, under CEQA for preparation and public dissemination of an EIR supporting such findings. The court was also not prepared to foreclose the right, preserved by CEQA, of any dissenting party to challenge an EIR. The court rejected deletion of all references to the potential environmental impact from the proposed judgment as unfeasible.

The trial court rejected the moving parties' contention that they had not approved a project subject to CEQA because the motion to amend a judgment imposing a physical solution is not a project. This contention relied upon the writ proceeding in the superior court challenging a resolution which supported an effort to amend the Central Basin Judgment. The writ was denied because the writ court concluded a resolution to seek to amend a judgment is not a project under CEQA, as the resolution did not commit the parties to the project, but only to filing a motion to amend. Unlike the writ proceeding in the Central Basin action, the trial court found the challenge here is not to the resolution to file the motion to amend, but it instead is a challenge to the motion seeking to amend the judgment.

The writ judgment did not touch upon the merits of a motion to amend, weigh the evidence, or make explicit findings that the plan to set aside a

defined space for storage at a certain depth of the West Basin would not have an adverse environmental impact. While the writ court could conclude the adoption of a resolution to seek court approval did not commit moving parties to the underground water storage plan, the same cannot be said of the approval sought by the moving parties of an elaborately detailed plan for water storage which would become part of the West Basin Judgment. Approval of the proposed judgment would be tantamount to approval of the storage plan, and all the explicit and implicit factual findings in the proposed judgment.

The result of approval of the proposed amended judgment would be that the salutatory provisions of CEQA would be bypassed in all practical respects. Alternatively, the trial court would be declaring facts that might be inconsistent with the facts determined in an EIR under CEQA. As the writ court recognized, any later CEQA review would be a post hoc rationalization of the prior project approval.

The trial court rejected the moving parties' suggestion that additional language be added to the amended judgment to clearly indicate that the WRD will be required to comply with CEQA with regard to its replenishment activities. Even if so amended, the possibility remained for potential conflict with the factual findings in the amended judgment. The findings in the proposed amended judgment had the potential of being inconsistent with any findings that might be made under regular judicial review under CEQA of the potential negative environmental impact of the storage plan.

The trial court also rejected the WRD's argument that the moving parties lack the authority to establish a protocol for management of the basin's storage space in a coordinated fashion, and only the court can amend the judgment with a physical solution. The flaw in the argument is that the motion did not merely establish a protocol for management and use of dewatered space, it also sought findings declaring that the storage plan would not have a negative impact on the basin.

The trial court stated it was possible that a motion aimed simply at amending the judgment to establish a governance system for water storage might have avoided the need for CEQA compliance, but the motion to amend the judgment calls for more than just creating a governance system. It establishes, in great detail, the locations of the underground storage spaces, how the space is to be used and by whom, and declares the plan will have no negative impact on the environment. On this record, the court rejected severance of the proposed plan of implementation from the provisions dealing with protocol for management of the West Basin's water resources. Such a revision of the proposed amended judgment would alter the substantive content of the motion and the proposed judgment in a fundamental way.

The trial court concluded the motion should be denied because of the absence of compliance with the requirements of CEQA by the WRD. The court's only finding of fact is that there is no evidence that WRD issued an EIR in compliance with CEQA. The plan proposed constitutes a project, compliance with CEQA is required, and the court denied the motion to amend the judgment due to the absence of CEQA compliance.

*Jurisdiction to Hear the 2009 Motion to Amend the Judgment*

The opposing parties argue the trial court had no jurisdiction to amend the West Basin Judgment to allow utilization of the dewatered space, reasoning that the court only retained jurisdiction under the 1961 judgment to issues involving extraction rights. We disagree, based upon the trial court's retained jurisdiction under the more expansive language of the 1980 amendment to the judgment.

A court has no power to act in the absence of subject matter jurisdiction. (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 196 [25 Cal.Rptr.3d 298, 106 P.3d 958]; *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 302 [109 P.2d 942].) The existence of subject matter jurisdiction is a question of law reviewed de novo on appeal. (*Robbins v. Foothill Nissan* (1994) 22 Cal.App.4th 1769, 1774 [28 Cal.Rptr.2d 190].)

The 1961 judgment follows the established practice of expressly granting the trial court continuing jurisdiction to address future issues involving water rights. (*City of Pasadena v. City of Alhambra* (1949) 33 Cal.2d 908, 937 [207 P.2d 17]; *City of L. A. v. City of Glendale* (1943) 23 Cal.2d 68, 81 [142 P.2d 289].) The court reserved jurisdiction to "make such modifications of or such additions to, the provisions of this judgment, or make such further order or orders as may be necessary or desirable for the adequate enforcement, protection or preservation of the rights of" the *parties*. The 1980 judgment materially expands the power of the trial court to take necessary steps *to protect and preserve the West Basin* in addition to the rights of the parties.

The moving parties sought a decree regarding the development of a project to utilize dewatered storage space to facilitate conservation and to improve the water supply for the region. Conservation and reliability of water supply fall within the parameters of the constitutional mandate of reasonable beneficial use. (Cal. Const., art. X, § 2; Wat. Code, §§ 100, 102, 105.) The right to use dewatered storage space to store water has long been sanctioned in this state. (See *City of Los Angeles v. City of San Fernando* (1975) 14 Cal.3d 199, 263–264 [123 Cal.Rptr. 1, 537 P.2d 1250], disapproved on other grounds in *City of Barstow v. Mojave Water Agency, supra,* 23 Cal.4th at

p. 1248; *City of L. A. v. City of Glendale, supra,* 23 Cal.2d at pp. 76–77.) The WRD has authority to do any act necessary to replenish the groundwater of the district. (§ 60220.)[9] The authorized acts to replenish the groundwater supplies include storing, exchanging, buying and selling and building necessary works. (§ 60221.)[10]

The motion sought to implement the right to store water in dewatered storage space, as necessary, to protect the West Basin. Under the 1980 judgment, the trial court has jurisdiction to make any order "as may be necessary or desirable for the adequate enforcement, protection or preservation" of the basin. The moving parties are correct that an adjudication concerning storage space in the basin falls within the broad retention of jurisdiction in the West Basin Judgment.

We disagree with the opposing parties that *Orange County Water Dist. v. City of Colton* (1964) 226 Cal.App.2d 642, 648–649 [38 Cal.Rptr. 286] requires a different result because the 1961 judgment at issue in this case is silent on the storage issue. *City of Colton* upheld a trial court's denial of a motion to modify a judgment determining prescriptive rights between parties. (*Ibid.*) The proposed modification in *City of Colton* would have covered issues not contemplated in the original judgment. Further, the proposed modification would have imposed terms upon parties who had not participated in the original proceedings. (*Id.* at pp. 648–650.) Unlike *City of Colton*, the modification of the original judgment in this case expanded the trial court's jurisdiction to reach the issues in the proposed amended judgment. Similarly, there is no merit to the opposing parties' reliance on *Big Bear Mun. Water Dist. v. Bear Valley Mutual Water Co.* (1989) 207 Cal.App.3d 363, 370 [254 Cal.Rptr. 757], which involved interpretation of a continuing jurisdiction provision narrowly limited to " 'interpretation, enforcement or carrying out this Judgment,' " which is materially different from the broad language before us. (*Ibid.*, italics omitted.)

 The opposing parties further argue the trial court's retention of jurisdiction over the storage issue violates the rule barring the adjudication of future water rights. (See *City of Pasadena v. City of Alhambra, supra,* 33 Cal.2d at p. 937; *Orange County Water Dist. v. City of Colton, supra,* 226

---

[9] Section 60220 states: "A district may do any act necessary to replenish the ground water of said district."

[10] Section 60221 states: "Without being limited to the following enumerations, a district may, among other things but only for the purposes of replenishing the groundwater supplies within the district: [¶] (a) Buy and sell water; [¶] (b) Exchange water; [¶] (c) Distribute water to persons in exchange for ceasing or reducing ground water extractions; [¶] (d) Spread, sink and inject water into the underground; [¶] (e) Store, transport, recapture, recycle, purify, treat or otherwise manage and control water for the beneficial use of persons or property within the district. [¶] (f) Build the necessary works to achieve ground water replenishment."

Cal.App.2d at pp. 648–649.) "Under this rule, even though the prospective reasonable beneficial uses of an overlying owner are protected, the specific quantity of water necessary for prospective uses cannot be determined until the need arises. (*Tulare Dist. v. Lindsay-Strathmore Dist.*[, *supra*,] 3 Cal.2d [at p.] 525 . . . .)" (*Central and West Basin Water Replenishment Dist. v. Southern Cal. Water Co., supra*, 109 Cal.App.4th at p. 904.) The rule, however, does not apply to allocation of storage space. (*Ibid.*, quoting & paraphrasing *City of Pasadena v. City of Alhambra, supra*, at p. 937.)

The trial court had jurisdiction to rule on the storage space allocation issue raised by the moving parties. We therefore turn to the remaining issue of whether the court properly determined that CEQA compliance was required prior to filing the motion to amend the judgment.

*The Court's Duty to Determine a Physical Solution*

A trial court exercises its equitable powers in approving a physical solution and entering the judgment, and review of that judgment is under the abuse of discretion standard of review. (*City of Barstow v. Mojave Water Agency, supra*, 23 Cal.4th at p. 1256; *California American Water v. City of Seaside, supra*, 183 Cal.App.4th at p. 481.) "By retaining jurisdiction to consider the effect of this added source of water and its dependability for the purpose of working out a solution, the court will be carrying out the policy inherent in the water law of this state to utilize all water available. [Citations.]" (*Allen v. California Water & Tel. Co.* (1946) 29 Cal.2d 466, 488 [176 P.2d 8].)

"Since the adoption of the 1928 constitutional amendment, it is not only within the power but it is also the duty of the trial court to admit evidence relating to possible physical solutions, and if none is satisfactory to it to suggest on its own motion such physical solution. [Citation.] The court possesses the power to enforce such solution regardless of whether the parties agree. If the trial court desires competent expert evidence on this or any other problem connected with the case, it possesses the power to refer the matter to the division of water rights of the board of public works, or to appoint it as an expert. [Citations.]" (*City of Lodi v. East Bay Mun. Utility Dist., supra*, 7 Cal.2d at p. 341; see *California American Water v. City of Seaside, supra*, 183 Cal.App.4th at p. 480; *Central Basin etc. Wat. Dist. v. Fossette* (1965) 235 Cal.App.2d 689, 699–700 [45 Cal.Rptr. 651].)

The trial court unquestionably denied the motion to amend the judgment without holding an evidentiary hearing aimed at establishing a physical solution to the issue of utilization of the dewatered portion of the West Basin. In so doing, the court did not fulfill its duties of holding an evidentiary hearing, and if the parties could not agree, suggesting a physical solution

which the court could impose upon the parties over their objections. (*City of Lodi v. East Bay Mun. Utility Dist., supra,* 7 Cal.2d at p. 341.)

■ We reject the trial court's legal conclusion that the WRD was required to obtain an EIR in compliance with CEQA before going forward with a motion to amend the judgment. "Generally, CEQA applies to discretionary projects. ([Pub. Resources Code,] § 21080, subd. (a).) A *project* is an activity undertaken by a public agency which may cause a physical change in the environment. ([Pub. Resources Code,] § 21065; Cal. Code Regs., tit. 14, § 15378; all further citations to title 14, section 15000 et seq. of California Code of Regulations will be referred to as Guidelines.) A *discretionary project* is one subject to 'judgmental controls,' i.e., where the agency can use its judgment in deciding whether and how to carry out the project. (Guidelines, § 15002, subd. (i); cf. *Friends of Westwood, Inc.* v. *City of Los Angeles* (1987) 191 Cal.App.3d 259, 271–273 [235 Cal.Rptr. 788] [distinguishing decision making discretion subject to CEQA from 'ministerial' activity that is not].)" (*Mountain Lion Foundation v. Fish & Game Com.* (1997) 16 Cal.4th 105, 112 [65 Cal.Rptr.2d 580, 939 P.2d 1280].) "Whenever a project may have a significant and adverse physical effect on the environment, an EIR must be prepared and certified. ([Pub. Resources Code,] § 21100, subd. (a); cf. *Bozung* v. *Local Agency Formation Com.* (1975) 13 Cal.3d 263, 277–279 [118 Cal.Rptr. 249, 529 P.2d 1017]; *City of Livermore* v. *Local Agency Formation Com.* (1986) 184 Cal.App.3d 531, 538 [230 Cal.Rptr. 867].)" (*Mountain Lion Foundation v. Fish & Game Com., supra,* at p. 113.)

However, where an existing judgment is in place establishing a physical solution to water rights issues, the public agency has no judgmental controls to exercise. The power to act in these circumstances is reserved to the court. This proposition is clearly set forth in section 10753, subdivision (a), which unambiguously deprives a local agency of the authority to "adopt and implement a groundwater management plan" if the groundwater basis is the subject of "a court order, judgment, or decree."

■ Where a physical solution is in place, a public agency may not order preparation of an EIR under CEQA that conflicts with the court order. (*California American Water v. City of Seaside, supra,* 183 Cal.App.4th at pp. 480–482.) Here, the trial court retained jurisdiction over the protection of the West Basin in the 1980 judgment, which deprives the WRD of authority to order CEQA compliance under section 10753. ■ To the extent there is a conflict between the statutory provision of CEQA and article X, section 2 of the California Constitution establishing a public policy of fostering the reasonable beneficial use of water, the constitutional provision must prevail and the court must hold an evidentiary hearing to resolve the issues presented by the motion to amend the judgment.

In exercising its broad equitable powers in seeking a physical solution, the trial court may and should take into account environmental concerns raised by the opposing parties. A physical solution will not preclude compliance with CEQA as to future projects to the extent such projects do not conflict with the physical solution. (*California American Water v. City of Seaside, supra*, 183 Cal.App.4th at p. 482.)

## DISPOSITION

The judgment is reversed. Appellants shall recover their costs on appeal.

Turner, P. J., and Kumar, J.,[*] concurred.

Petitions for a rehearing were denied October 19, 2012.

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.