[No. B235039. Second Dist., Div. Eight. Dec. 10, 2012.]

CENTRAL BASIN MUNICIPAL WATER DISTRICT, Plaintiff and Appellant, v.
WATER REPLENISHMENT DISTRICT OF SOUTHERN CALIFORNIA, Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rule 8.1110(a), this opinion is certified for publication with the exception of part 3. of the Discussion.

## COUNSEL

Buchalter Nemer, Douglas E. Wance, Harry W.R. Chamberlain II, Howard N. Ellman and Ivo Keller for Plaintiff and Appellant.

Alston & Bird, Edward J. Casey and Neal P. Maguire for Defendant and Respondent.

## OPINION

**FLIER, J.**—This appeal follows the declaration by the respondent Water Replenishment District of Southern California (WRD) of a "water emergency" in the Central Basin, a groundwater basin. Under the terms of a judgment governing the Central Basin, a water emergency may be declared when the Central Basin resources risk degradation. The judgment empowers WRD to declare the water emergency. The judgment governed not only a declared water emergency but also provided a comprehensive framework for

water use in the Central Basin. It imposed a " 'physical solution,' " best described as " 'an equitable remedy designed to alleviate overdrafts and the consequential depletion of water resources in a particular area, consistent with the constitutional mandate to prevent waste and unreasonable water use and to maximize the beneficial use of this state's limited resource.' [Citation.]" (*Hillside Memorial Park & Mortuary v. Golden State Water Co.* (2011) 205 Cal.App.4th 534, 538, fn. 2 [131 Cal.Rptr.3d 146] (*Hillside*).)

Notwithstanding the comprehensive nature of the judgment, this appeal concerns only the declared water emergency. In a petition for writ of mandate, appellant Central Basin Municipal Water District (CBMWD) challenged the declared water emergency on the ground that WRD did not comply with the requirements of the California Environmental Quality Act (CEQA; Pub. Resources Code, § 21000 et seq.),[1] a broad environmental law applying to most public agencies' decisions to approve projects that could adversely affect the environment. (1 Kostka & Zischke, Practice Under the Cal. Environmental Quality Act (Cont.Ed.Bar 2d ed. 2008) § 1.1, pp. 2–3.) CBMWD appeals from the order sustaining WRD's demurrer to CBMWD's petition for writ of mandate. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

CBMWD is a municipal water district, and WRD is a water replenishment district. Both agencies' powers are statutorily defined. (Wat. Code, §§ 60000 et seq., 71000 et seq.) The 1991 second amended judgment (the Judgment) governs the Central Basin. It affords WRD the power to declare a water emergency. The Judgment also establishes the water rights of numerous entities with the right to extract water from the Central Basin (referred to as pumpers). Declaring a water emergency alters the portion of a pumper's allocation of water that the pumper may "carry over" to another year, meaning the entity retains the right to that water longer than it otherwise would.[2] It also permits a longer period to replace a pumper's overextraction

---

[1] Statutory citations are to the Public Resources Code unless otherwise indicated.

[2] The Judgment provides: "Following the declaration of a Declared Water Emergency and until the Declared Water Emergency ends either by expiration or by resolution of the Board of Directors of the Central and West Basin Water Replenishment District, each party adjudged to have a Total Water Right or water rights and who, during a particular Administrative year, does not extract from Central Basin a total quantity equal to such party's Allowed Pumping Allocation for the particular Administrative year, less any allocated subscriptions by such party to the Exchange Pool, or plus any allocated requests by such party for purchase of Exchange Pool water, is permitted to carry over (the 'Drought Carryover') from such Administrative year the right to extract from Central Basin so much of said total quantity as it did not extract

of ground water (i.e., an extraction of an amount greater than the pumper's annual allotment).[3]

Pursuant to the Judgment, WRD is empowered to declare a water emergency if the following conditions are met: "without implementation of the water emergency provisions of this Judgment, the water resources of the Central Basin risk degradation." The Judgment imposes a limit of one year on a declared water emergency, though the term may be less than one year. The Judgment reserves continuing jurisdiction to the court.

On November 19, 2010, WRD declared a water emergency, which by later resolution expired on June 30, 2011. On December 29, 2010, CBMWD challenged the declared water emergency in a petition for writ of mandate, contending that WRD was required to follow CEQA prior to declaring a water emergency. CBMWD argued that the declaration of a water emergency had environmental consequences because it increased the pumpers' carryover rights and extended from one year to five years the period in which pumpers could replace overextracted water. CBMWD argued that "WRD ignored the significant environmental impacts associated with substantially increased short-term holding and long-term pumping of groundwater resources allocated as Drought Carryover to Central Basin extractors . . . and did not even bother to contemplate the impacts associated with the delayed replacement of over-pumped ground water supplies over a 5 year period . . . as a result of the 5 Year Replenishment." According to CBMWD, the consequences of the declared water emergency "may result in significant environmental effects."

WRD demurred, and the trial court sustained WRD's demurrer to the petition, finding that CBMWD could not state a cause of action under CEQA. The court noted that the declaration of a water emergency had been approved in the Judgment. The court concluded, "WRD's declaration was under authority granted by the judgment. The WRD although a public agency in most respects was not acting as such in this situation, but rather as an agent of the court. See *California American Water v. City of Seaside* (2010) 183 Cal.App.4th 471 [107 Cal.Rptr.3d 529]. Therefore, the 'activity' was approved by the court, not a public agency." The trial court explained: "the

during the period of the Declared Water Emergency, to the extent such quantity exceeds the One Year Carryover, not to exceed an additional 35% of such party's Allowed Pumping Allocation, or additional 35 acre feet, whichever of said 35% or 35 acre feet is the larger. Carryover amounts shall first be allocated to the One Year Carryover and any remaining carryover amount for that year shall be allocated to the Drought Carryover."

[3] According to the terms of the Judgment, if a party overextracts from the Central Basin, its pumping allocation for the following year is reduced. If any portion of overextraction occurred during a declared water emergency, the replenishment may be prorated over five years.

mechanism for challenging the court ruling or activities conducted pursuant to the judgment are provided for in the judgment. Those matters are reviewed by the court with retained jurisdiction to oversee the judgment. Groundwater usage authorized by and consistent with the governing judgment for the groundwater basin is exempt from CEQA because such area is reserved 'for resolution by the court or the Watermaster.' *California American Water v. City of Seaside*[, *supra*, at pp.] 481–482. Water rights adjudication, not CEQA, 'governs the environmental aspects of groundwater usage' [citations]." This appeal followed.

While this case was pending, the parties were litigating the propriety of the declared water emergency in another court—the one with continuing jurisdiction over the case. In that case, the Cities of Cerritos, Downey and Signal Hill, later joined by CBMWD, argued the declared water emergency was unjustified under the terms of the Judgment. That court stayed all consequences of the declared water emergency.[4]

## DISCUSSION

We conclude the trial court properly sustained WRD's demurrer to CBMWD's petition for writ of mandate because CEQA does not apply and even if it did, it would be trumped by the physical solution governing the Central Basin. We decline to consider CBMWD's remaining arguments because they are not properly raised in this appeal.

### 1. *CEQA Is Inapplicable*

■ One purpose of CEQA is to ensure public agencies regulating "projects" consider preventing environmental damage. (§ 21000, subd. (g).) " 'Project' means an activity which may cause either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in

---

[4] We requested supplemental briefing regarding whether this case is moot as the result of a stay imposed in the other litigation. We conclude it is not moot because WRD concedes some parties potentially may have accrued carryover rights as a result of the declared water emergency. In connection with its supplemental brief, WRD requested judicial notice of parts of the October 2011 Watermaster report and of a court order staying the declared water emergency. We deny the request to take judicial notice of the Watermaster report because WRD fails to show the content of the Watermaster report is a proper subject of judicial notice. We grant the request to take judicial notice of the court order, which is proper under Evidence Code section 452, subdivision (d).

the environment . . . ." (§ 21065.) CEQA distinguishes between discretionary and ministerial projects, and applies only to the former. (§ 21080; *Friends of Westwood, Inc. v. City of Los Angeles* (1987) 191 Cal.App.3d 259, 271–273 [235 Cal.Rptr. 788].) For every discretionary project with a significant environmental effect, the public agency must prepare an environmental impact report (EIR). (§ 21151.) "The EIR is the primary means of achieving the Legislature's considered declaration that it is the policy of this state to 'take all action necessary to protect, rehabilitate, and enhance the environmental quality of the state.' [Citation.] The EIR is therefore 'the heart of CEQA.' [Citations.]" (*Laurel Heights Improvement Assn. v. Regents of University of California* (1989) 47 Cal.3d 376, 392 [253 Cal.Rptr. 426, 764 P.2d 278].)

■ CEQA does not apply to ministerial actions—actions in which the agency is not permitted to shape the process to address environmental concerns. (§ 21080, subd. (b)(1).) *Leach v. City of San Diego* (1990) 220 Cal.App.3d 389, 394–395 [269 Cal.Rptr. 328] explained the distinction between a ministerial and discretionary project: " 'To properly draw the line between "discretionary" and "ministerial" decisions in this context, we must ask why it makes sense to exempt the ministerial ones from the EIR requirement. The answer is that for truly ministerial permits an EIR is irrelevant. No matter what the EIR might reveal about the terrible environmental consequences of going ahead with a given project the government agency would lack the power (that is, the discretion) to stop or modify it in any relevant way. The agency could not lawfully deny the permit nor condition it in any way which would mitigate the environmental damage in any significant way. . . . Thus, to require the preparation of an EIR would constitute a useless—and indeed wasteful—gesture.' [Citation.]"

CEQA is inapplicable here for two separate reasons. First, the declaration of a water emergency by itself has no environmental impact and therefore is not a project within the meaning of CEQA. Instead, it is a mere statement that the resources of the Central Basin risk degradation. Instead of focusing on the actual declaration, CBMWD argues that other provisions of the Judgment may trigger significant environmental effects, but that argument is irrelevant because the only role of WRD—the public agency whose conduct CBMWD challenged—was to declare the water emergency. Second, WRD had no discretion to alter the terms of the Judgment even if it prepared an EIR and determined that the carryover and delayed replacement would have significant environmental effects. Thus, even if the declaration of the water

emergency should be viewed together with its consequences, WRD's decision was ministerial. WRD simply had no discretion to alter the carryover rights or delayed replenishment, and the preparation of an EIR would have been a futile act.

### 2. *If Applicable, CEQA Is Trumped by the Physical Solution*

■ The California Constitution requires the "water resources of the State be put to beneficial use to the fullest extent of which they are capable, and that the waste or unreasonable use or unreasonable method of use of water be prevented, and that the conservation of such waters is to be exercised with a view to the reasonable and beneficial use thereof in the interest of the people and for the public welfare. . . ." (Cal. Const., art. X, § 2.) As noted, a physical solution is an equitable decree designed to implement the constitutional mandate and to maximize the beneficial use of water. (*California American Water v. City of Seaside, supra,* 183 Cal.App.4th at p. 480 *(Seaside).*) The court has power to enforce a physical solution regardless of whether the parties agree to it. (*City of Lodi v. East Bay Mun. Utility Dist.* (1936) 7 Cal.2d 316, 341 [60 P.2d 439].)

■ Recently, Division Five of this court considered a CEQA challenge to a proposed amendment to the physical solution in the West Coast Basin, a basin that adjoins the Central Basin and is hydrogeologically linked to the Central Basin. (*Hillside, supra,* 205 Cal.App.4th 534.) The appellate court reviewed the trial court's rejection of a proposed amendment to the judgment imposing the physical solution because "language in the proposed amendment included environmental findings that would potentially be inconsistent with any [EIR] later prepared under" CEQA. (*Hillside,* at p. 538.) The appellate court concluded that CEQA review of the proposed amendment was unnecessary. (*Hillside,* at p. 539.) The appellate court explained that: "[U]nder California's constitutional approach to water law, if the parties could not agree on a resolution of the issue presented in the motion to amend the judgment, the trial court had a duty to admit evidence, and if necessary, suggest a physical solution for use of dewatered acreage." (*Id.* at pp. 538–539.) "[W]here an existing judgment is in place establishing a physical solution to water rights issues, the public agency has no judgmental controls to exercise. The power to act in these circumstances is reserved to the court." (*Id.* at p. 550.)

*Seaside* reached the same conclusion rejecting a CEQA challenge in the context of a groundwater basin governed by a physical solution. In *Seaside,*

one party sought a declaration of rights among all parties interested in the production and storage of water in the Seaside Basin. (*Seaside, supra,* 183 Cal.App.4th at p. 474.) The superior court entered a physical solution to provide for coordinated management of the groundwater resources. (*Ibid.*) Following entry of the physical solution, an issue arose with respect to an application for a permit to pump water from the basin by a party to the judgment. (*Id.* at p. 477.) The permit was denied until further environmental review pursuant to CEQA could be obtained. (*Seaside,* at p. 477.) The trial court concluded that an agency with authority to distribute permits could not " 'exercise that authority in contravention of the Physical Solution imposed' " over the basin. (*Id.* at p. 478.) The trial court further ruled that " 'the Physical Solution governs the environmental aspects of Seaside Basin [groundwater] usage, and . . . no [p]arty to this adjudication can require environmental review under [CEQA] with regard to such usage. . . .' " (*Ibid.*)

The appellate court affirmed CEQA's inapplicability, reasoning that "[i]n adopting the physical solution the court expressly defined it as 'the efficient and equitable management of Groundwater resources within the Seaside Basin.' It . . . delineated the rights of the producing parties, including calculation of each party's production allocation for the succeeding years." (*Seaside, supra,* 183 Cal.App.4th at p. 481.) The trial court "acted within its jurisdiction and properly exercised its discretion in adhering to its prior rulings to minimize conflict with and frustration of the physical solution." (*Ibid.*)

■ Under *Hillside* and *Seaside,* the trial court properly denied CBMWD's petition to mandate compliance with CEQA as it sought to frustrate the physical solution in the Central Basin. CBMWD seeks to have WRD exercise its authority in contravention of the Judgment by requesting WRD study consequences of the carryover and five-year replenishment, which are terms of the Judgment establishing a physical solution (and not subject to WRD's modification). The trial court properly denied CBMWD's petition.

3. *CBMWD Fails to Show Its Remaining Arguments Are Properly Raised in this Appeal**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

.

---

*See footnote, *ante,* page 943.

## DISPOSITION

The order denying the petition for writ of mandate is affirmed. Respondent is entitled to costs on appeal.

Bigelow, P. J., and Rubin, J., concurred.