TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

XAVIER BECERRA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 17-902 |
| of | : | April 24, 2018 |
| XAVIER BECERRA<br>Attorney General | : | |
| LAWRENCE M. DANIELS<br>Deputy Attorney General | : | |

_____

Proposed relator THE CITY OF HUNTINGTON PARK has requested leave to sue proposed defendant JOHN OSKOUI in quo warranto to remove him from the Board of Directors of the Central Basin Municipal Water District. Proposed relator contends that the water district improperly excluded proposed relator's nominee from consideration for appointment as a director of the district by incorrectly concluding that the nominee was not "a representative of a city" within the meaning of Water Code section 71267, subdivision (f)(2).

CONCLUSION

Whether proposed relator's nominee was "a representative of a city" and was therefore improperly excluded from consideration for appointment—thereby requiring proposed defendant's removal from office so that a new appointment process may be conducted—presents substantial questions of law and fact warranting judicial resolution. Further, allowing the action to proceed would serve the public interest. Therefore, leave to sue in quo warranto is GRANTED.

1

17-902

ANALYSIS

**Introduction**

Water Code section 71267, subdivision (f)(2) provides that "[t]he term of a director" appointed on behalf of cities who are water purveyors of the Central Basin Municipal Water District (District) "is terminated if the appointed director no longer is employed by or a representative of a city."[1] In its application to sue proposed defendant John Oskoui (Defendant) in quo warranto, proposed relator the City of Huntington Park (City) seeks to remove Defendant from his office as an appointed District director, so that the City's own nominee for that office, Dr. Michael Gomez, may be considered for appointment. The City claims that the District wrongly excluded Dr. Gomez from consideration for appointment based on an incorrect determination that he was not a "representative of a city." The City argues that, consistent with the ordinary meaning of "representative," it selected Dr. Gomez to speak and act for it by nominating him. For the reasons that follow, we believe that the City's claim warrants a judicial resolution.

**Background**

The District is a municipal water district organized in 1952 under the Municipal Water District Law of 1911 to help mitigate groundwater over pumping in southeast Los Angeles County.[2] The District purchases imported water from the Metropolitan Water District of Southern California and sells the water within the District's boundaries to water purveyors—municipal water companies, investor-owned utilities, private companies, and other water districts—which then retail the water to residents and businesses.[3] The City is a water purveyor of the District and provides water to residents of the City.[4]

---

[1] Wat. Code, § 71267, subd. (f)(2).

[2] Wat. Code, § 71000 et seq.; *Central Basin Mun. Wat. Dist. v. Wat. Replenishment Dist. of Southern Cal.* (2012) 211 Cal.App.4th 943, 946; 80 Ops.Cal.Atty.Gen. 242, 242 (1997); https://www.centralbasin.org/about-us.

[3] *City of Vernon v. Central Basin Mun. Wat. Dist.* (1999) 69 Cal.App.4th 508, 510, 512. A "water purveyor" is defined elsewhere as "any person who furnishes water service to another person." (Wat. Code, § 512.)

[4] https://www.centralbasin.org/water-supplies/retail-water-providers. The City is organized as a general law city, not as a charter city. (See https://www.cacities.org/Resources-Documents/Resources-Section/Charter-Cities/Charter_Cities-List.)

The District's board of directors was formerly composed of five members, each elected by the voters of one of the District's five geographical divisions to represent that division.[5]  In December 2015, an audit by the California State Auditor reported that, among other things, the District engaged in improper contracting practices, spent public funds unrelated to its mission, and failed to provide appropriate leadership.[6]  In response, the Legislature enacted Assembly Bill Number 1794, adding Water Code sections 71265 through 71267, effective January 1, 2017.[7]  These sections implemented one of the audit's recommendations:  to improve the District's governance by expanding the membership of the board of directors to include appointees of different categories of water purveyors.[8]  The Legislature's purpose in enacting this legislation was to increase the board's technical expertise and to make it more representative and accountable to a greater range of stakeholders.[9]

Specifically, this legislation reduced the number of elected directors from five to four, and created three appointee-positions to the board, for a total of seven directors.[10]  In this new scheme, one appointed position is to be selected by each of the following:  (1) all large water purveyors of the District from the nominees of large water purveyors; (2) all cities that are water purveyors of the District from the nominees of cities; and (3) all water purveyors of the District from any nominee.[11]  The nominee of each of these three water-

---

[5] Wat. Code, §§ 71250, 71501, 71502, 71540.

[6] Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1794 (2015-2016 Reg. Sess.) as amended Aug. 15, 2016, p. 4.  For a more detailed account, see the auditor's report at https://www.auditor.ca.gov/pdfs/reports/2015-102.pdf.

[7] Stats. 2016, ch. 401, § 1, eff. Jan. 1, 2017.

[8] Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1794 (2015-2016 Reg. Sess.) as amended Aug. 15, 2016, p. 5.

[9] Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1794 (2015-2016 Reg. Sess.) as amended Aug. 15, 2016, pp. 6-7; Assem., Conc. in Sen. Amend. of Assem. Bill No. 1794 (2015-2016 Reg. Sess.) as amended Aug. 15, 2016, pp. 9-10.

[10] Wat. Code, § 71266, subd. (a).  The board will retain the five elected directors until the election of November 8, 2022, at which point there will be four geographical divisions, each of whose voters will elect a director.  (Wat. Code, §§ 71266, subds. (c), (d), 71540.)

[11] Wat. Code, § 71267, subd. (c)(1).  A "large water purveyor" is defined as "a public system that is one of the top five purveyors of water as measured by the total purchase of potable and recycled water from the district for the three prior fiscal years."  (Wat. Code, § 71265, subd. (b).)  The City is not a large water purveyor under this definition because it is the District's sixth largest purchaser of water.  (https://www.centralbasin.org/sites/defa

3

purveyor categories who receives the highest number of votes from the specified water purveyors is appointed as director for that category.[12]

The category at issue in this matter is all cities that are water purveyors of the District (the city category). For appointment to the city category, a nominee must "demonstrate eligibility and relevant technical expertise."[13] An appointed director in the city category must live or work within the District,[14] hold no elective office,[15] and own no more than 0.5 percent of a company regulated by the Public Utilities Commission.[16] In addition, "[t]he term of a director [in the city category] is terminated if the appointed director no longer is employed by or a representative of a city."[17]

We are informed that in January 2017, the City nominated Dr. Michael Gomez as its nominee for cities and as its nominee for all water purveyors. The general manager of the District permitted Dr. Gomez to be placed on the ballot in the all-water-purveyor category but refused it in the city category on the ground that he was not "employed by or a representative of a city."[18]

---

ult/files/meeting-agendas/Special%20Administration%20%26%20Ethics%2012-07-2016_0.pdf, p. 45.)

[12] Wat. Code, § 71267, subd. (c)(3). Each large water purveyor and city has one vote to appoint a director in its respective category. (Wat. Code, § 71267, subd. (c)(1)(A), (c)(1)(B).) Under the all-water-purveyor category, however, "[t]he vote of each purveyor shall be weighted to reflect the number of service connections of that water purveyor within the district." (Wat. Code, § 71267, subd. (c)(1)(C).)

[13] Wat. Code, § 71267, subd (b). "Relevant technical expertise" is defined as "employment or consulting for a total period of at least five years, prior to the date of first appointment, in one or more positions materially responsible for performing services relating to the management, operations, engineering, construction, financing, contracting, regulation, or resource management of a public water system." (Wat. Code, § 71265, subd. (d).)

[14] Wat. Code, § 71267, subd. (d). There is no statutory requirement that an appointed director in the city category live in the nominating city, just that the director live or work within the District. (*Ibid.*)

[15] Wat. Code, § 71267, subd. (g)(1)(A).

[16] Wat. Code, § 71267, subd. (g)(1)(B).

[17] Wat. Code, § 71267, subd. (f)(2).

[18] The District's general manager did not find that Dr. Gomez failed to satisfy any other requirement of an appointed director in the city category.

4

17-902

In February 2017, over the City's objections, the District conducted the vote for appointment in the all-water-purveyor category with Dr. Gomez on the ballot and in the city category without Dr. Gomez on the ballot. In the all-water-purveyor category, Dr. Gomez was not selected for appointment. In the city category, Defendant was the only nominated candidate and was appointed as a director of the District for a four-year term expiring in February 2021. In a letter to the District, the City argued that Defendant's appointment was invalid because Dr. Gomez was its designated representative by virtue of its nomination and thus should have been on the appointment ballot.

In March 2017, the District sent a letter to the City rejecting its claim that the appointment process had been improper. The District reiterated that Dr. Gomez was not an employee of a city. It explained that Dr. Gomez also was not a representative of a city because, based on all the circumstances, he had no "nexus" with a city in the District. Although Dr. Gomez had relevant technical experience from his 26 years on the Board of Directors of the Walnut Park Mutual Water Company, a water purveyor of the District, that company only supplied water to the unincorporated area of Walnut Park, not to a city. Nor did Dr. Gomez live or work in the City or serve on any water commission of the City.

In May 2017, the City filed a petition for writ of mandate in superior court against the District to order a new appointment-process on the ground that the City's nominee, Dr. Gomez, was improperly excluded from consideration for appointment in the city category. In June 2017, the District filed a demurrer arguing, in part, that quo warranto, not mandate, was the appropriate form of action. In July 2017, the superior court sustained the demurrer on this basis with leave to amend if the City obtained the Attorney General's consent to file an action in quo warranto.

**The Nature of Quo Warranto**

Quo warranto is used to challenge whether someone unlawfully holds a public office.[19] Code of Civil Procedure section 803 provides:

> An action may be brought by the attorney-general, in the name of the people of this state, upon his own information, or upon a complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office . . . within this state.[20]

---

[19] Code Civ. Proc., § 803; *Nicolopulos v. City of Lawndale* (2001) 91 Cal.App.4th 1221, 1225 (*Nicolopulos*); 76 Ops.Cal.Atty.Gen. 157, 165 (1993).

[20] Code Civ. Proc., § 803; see *Rando v. Harris* (2014) 228 Cal.App.4th 868, 875; 97 Ops.Cal.Atty.Gen. 12, 14 (2014).

When a private party wishes to file a quo warranto action in superior court, the party must first obtain permission, or "leave," from the Attorney General.[21] In order to grant an applicant leave to sue in quo warranto, we must make three findings: (1) quo warranto is the proper remedy to resolve an issue presented; (2) the application presents a substantial issue of law or fact appropriate for judicial resolution; and (3) granting the application would serve the overall public interest.[22] Using this three-part framework, we consider the question presented in Relator's application.

### 1.     Quo Warranto is the Proper Remedy Here

To decide if quo warranto is the proper remedy, we examine whether Defendant is holding a public office and whether the City is challenging Defendant's title to that public office.[23] We have previously determined that a director of the District holds a public office.[24] The position of a water-district director is a public office because: it is a governmental position; created or authorized by law; with a continuing and permanent tenure; and in which the incumbent performs a public function and exercises some sovereign powers of government.[25]

We also find that the City is challenging Defendant's title to the office of District director in the city category by claiming that the District wrongfully excluded its nominee for that office. Defendant argues that quo warranto is not a proper remedy in this instance because there is no dispute that *he* was qualified to serve, and because the City does not directly challenge *his* qualifications or right to hold office. However, if the City is correct that Dr. Gomez, the City's nominee, should have been considered for appointment, then Defendant's appointment resulted from a defective appointment process, despite Defendant's own apparent eligibility.[26] Where a relator has been prohibited from

---

[21] *Nicolopulos*, *supra*, 91 Cal.App.4th at pp. 1228-1229; 98 Ops.Cal.Atty.Gen. 85, 87 (2015).

[22] 96 Ops.Cal.Atty.Gen. 36, 40 (2013); 95 Ops.Cal.Atty.Gen. 50, 54 (2012).

[23] 96 Ops.Cal.Atty.Gen., *supra*, at pp. 41-45; 73 Ops.Cal.Atty.Gen. 197, 200-201 (1990).

[24] 80 Ops.Cal.Atty.Gen., *supra*, at p. 244.

[25] *Moore v. Panish* (1982) 32 Cal.3d 535, 545; *People ex rel Chapman v. Rapsey* (1940) 16 Cal.2d 636, 639-640; see Wat. Code, § 71300 et seq (specifying public duties and powers of water-district directors); 80 Ops.Cal.Atty.Gen., *supra*, at p. 244 (listing opinions of the Attorney General finding that directors of various water districts hold public offices).

[26] Should the City ultimately prevail in this quo warranto action, and its nomination of Dr. Gomez then be considered in the resulting new appointment process, we see no reason

6

appointment based on his or her qualifications, this may form a sufficient basis for quo warranto relief.[27] Moreover, in sustaining the District's demurrer, the superior court already determined that quo warranto was the "sole remedy" in this case.

## 2. The Application Presents Substantial Questions of Law and Fact

Having established that quo warranto is the proper remedy, we next address whether the City has raised a substantial issue of law or fact that warrants judicial resolution. In deciding whether there is a substantial issue of law or fact, we do not purport to determine the merits of the controversy.[28] As we have explained, "the action of the Attorney General is a preliminary investigation, and the granting of the leave is not an indication that the position taken by the relator is correct, but rather that the question should be judicially determined and that quo warranto is the only proper remedy."[29]

Here, the question presented is whether the general manager of the District properly declined to accept Dr. Gomez as the City's nominee in the city category. According to the parties, this question hinges on whether Dr. Gomez, if appointed, would be "a representative of a city" within the meaning of Water Code section 71267, subdivision (f)(2). Again, subdivision (f)(2) provides that "[t]he term of a director appointed pursuant to subparagraph (B) of paragraph (1) of subdivision (c) [the city category] is terminated if the appointed director no longer is employed by or a representative of a city."[30]

In interpreting this language, we rely on well-established rules of statutory construction. The fundamental purpose in interpreting a statute is to ascertain the Legislature's intent in order to effectuate the law's purpose.[31] "If the statute's language is

_____

why Defendant could not be re-nominated for appointment consideration in that new process.

[27] 73 Ops.Cal.Atty.Gen., *supra*, at pp. 200-201 (granting quo warranto application to sue an appointed personnel commissioner of a school district to determine whether the relator was a resident of the district and therefore was improperly declared ineligible to serve in that office); see also *Nicolopulos*, *supra*, 91 Cal.App.4th at p. 1226.

[28] 97 Ops.Cal.Atty.Gen. 50, 51 (2014).

[29] 12 Ops.Cal.Atty.Gen. 340, 341 (1948), quoted in 90 Ops.Cal.Atty.Gen. 82, 86 (2007).

[30] Wat. Code, § 71267, subd. (f)(2). Subparagraph (B) of paragraph (1) of subdivision (c) states: "One director shall be selected by all cities that are water purveyors of the district from the nominees of cities. Each city shall have one vote." (Wat. Code, § 71267, subd. (c)(1)(B).)

[31] *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-

7

clear and unambiguous, its provisions should be applied according to their terms without further judicial construction so long as their meaning is in accord with the purpose of the statute."[32] "[W]e consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose"[33] Words in statutes are generally accorded "their usual, ordinary meaning, which in turn may be obtained by referring to a dictionary."[34]

Applying these principles, we must determine if there is a substantial question whether the District correctly decided that Dr. Gomez was ineligible for appointment because he was not "employed by or a representative of a city."[35] We believe that the plain meaning of "representative" supports the City's claim that Dr. Gomez was eligible to be "a representative of a city" and should have been considered for appointment.[36] The Legislature did not define "representative" as used in Water Code section 71267, subdivision (c)(1)(B), and the statute's legislative history does not address the meaning of the term. "Representative," however, is commonly and popularly defined as "[a] person chosen or elected to speak and act on behalf of others in a legislative assembly or deliberative body."[37] This dictionary definition of "representative" is consistent with the

<hr>

1387.

[32] *People v. Dillon* (2007) 156 Cal.App.4th 1037, 1044, citing *People v. Snook* (1997) 16 Cal.4th 1210, 1216-1217.

[33] *Curle v. Super. Ct.* (2001) 24 Cal.4th 1057, 1063.

[34] *Smith v. Selma Community Hosp.* (2010) 188 Cal.App.4th 1, 30, citing *Wal-Mart Stores, Inc. v. City of Turlock* (2006) 138 Cal.App.4th 273, 294; accord, 99 Ops.Cal.Atty.Gen. 94, 100, fn. 30 (2016).

[35] Wat. Code, § 71267, subd. (f)(2).

[36] It is undisputed that Dr. Gomez was not "employed by . . . a city." (Wat. Code, § 71267, subd. (c)(1)(B).)

[37] https://en.oxforddictionaries.com/definition/representative; see Black's Law Dict. (10th ed. 2014) p. 1494, col. 2 (defining "representative" as "[s]omeone who stands for or acts on behalf of another"); Random House Webster's Unabridged Dict. (2d ed. 1997) p. 1635, col. 1 (defining "representative" as "a person or thing that represents another or others"); *id.* at p. 1634, col. 3 (to "represent" is "to speak and act for by delegated authority" and "to act for or in behalf of (a constituency, state, etc.) by deputed right in exercising a voice in legislation or government"); Webster's New International Dict. (2d ed. 1961) p. 2114, col. 1 (to "represent" means "[t]o serve with delegated or deputed authority, resulting from an election, as in a legislative body; to deliberate and act for a constituency").

17-902

term's definition in other statutory contexts.[38]  In the Commercial Code, for example, "'[r]epresentative' means *a person empowered to act for another*, including an agent, an officer of a corporation or association, and a trustee, executor, or administrator of an estate."[39]

A plain-meaning interpretation of "representative" comports with the Legislature's goal to enact a law that "allows [the District's] board to draw upon more technical expertise, and makes the board more representative and accountable to a broader range of stakeholders."[40]  By broadening the pool of candidates, this interpretation leaves the cities freer to choose the most technically qualified persons.  And, by affording the cities more discretion to select or dismiss directors who best further the cities' interests, this interpretation makes the board more accountable to the cities as District stakeholders.

In this case, if the general manager had allowed Dr. Gomez's name to be included on the ballot in the city category, and if the cities had voted to appoint him, the cities would have delegated him to speak for them and act on their behalf.  He therefore would have been their "representative" according to that term's plain meaning.

Defendant nonetheless maintains that a nexus with a city was necessary to be a representative of a city.  In this connection, he argues that the District properly found that Dr. Gomez had no nexus with the City because:  Dr. Gomez lived in an unincorporated community (Walnut Park), not the City; although he was a director of the Walnut Park

---

[38] See *People v. Page* (2004) 123 Cal.App.4th 1466, 1472 ("Absent a peculiar statutory definition, however, no sound reason appears to define a 'deadly weapon' for purposes of [Penal Code] section 245 differently than it is defined in other contexts under other statutes," internal quotation marks omitted ); *Marshall v. Pasadena Unified School Dist.* (2004) 119 Cal.App.4th 1241, 1257-1258 (defining "emergency" in Public Contract Code section 20113 in a manner "consistent with emergency provisions in other contexts").

[39] Com. Code, § 1201, subd. (b)(33), italics added; see also Gov. Code, § 53760.1, subd. (g) ("'Local public entity representative' means the person or persons designated by the local public agency with authority to make recommendations and to attend the neutral evaluation on behalf of the governing body of the municipality"); Pub. Util. Code, § 99560.1, subd. (h) ("'Employer representative' means any person or persons authorized to act on behalf of the employer"); see also 45 U.S.C. § 151 (under the Railway Labor Act, "[t]he term 'representative' means any person or persons, labor union, organization, or corporation designated either by a carrier or a group of carriers or by its or their employees, to act for it or them").

[40] See Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1794 (2015-2016 Reg. Sess.) as amended Aug. 15, 2016, pp. 6-7.

Mutual Water Company, it has its own water system not served by the District; and he was not a City employee, City water consultant, or City water-commission member. Although Defendant's (and the District's) position is not unreasonable, we see some weaknesses in that approach.

First, there is no support in the ordinary meaning of the phrase "representative of a city" to conclude that the cities cannot decide, without any further showing, that a qualified nominee should act or speak on their behalf. Because this plain meaning is consistent with the statute's purpose, as explained above, it seems needless to venture beyond it.[41]

Second, Defendant's test would insert an additional, "nexus" requirement into the statutory qualifications for serving as an appointee.[42] The Legislature enumerated specific eligibility requirements to ensure the cities would be well-represented—particularly, that their chosen director must have relevant technical expertise and must live or work within the District—but not a city-nexus requirement.[43] With respect to other boards, the Legislature has explicitly imposed eligibility requirements involving a connection with the cities that the appointed board members represent;[44] its omission of such a requirement here cuts against Defendant's interpretation.

---

[41] *Olson v. Automobile Club of Southern Cal.* (2008) 42 Cal.4th 1142, 1147.

[42] See *Cal. Fed. Savings and Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349 ("In the construction of a statute . . . the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or omit what has been inserted . . . . We may not, under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used," internal quotation marks and citations omitted); 99 Ops.Cal.Atty.Gen. 82, 84-85 (2016) ("we may not rewrite the statute to conform to a presumed intent that could have been, but was not, expressed").

[43] Wat. Code, § 71267, subds. (b), (d).

[44] See, e.g., Gov. Code, § 66620, subd. (i) (for the San Francisco Bay Conservation and Development Commission, "[f]our city representatives appointed by the Association of Bay Area Governments [must be] among the residents of the bayside cities"); Harb. & Nav. Code App. 1, § 16 (for the Board of Commissioners of the San Diego Unified Port District, "[t]he commissioners shall be residents of the respective cities they represent at the time of their appointments"); Health & Saf. Code, § 13140.5 (for the State Board of Fire Services, any "city government representative shall be selected from elected or appointed city chief administrative officers or elected city mayors or council members").

10

Third, the District's nexus test does not accommodate the judicial preference for bright-line rules.[45]  Under the District's multi-factor examination, it may be uncertain when a candidate's connection with a city is sufficient, or when a director's connection with a city is no longer sufficient.  On the other hand, under the plain-meaning interpretation of the term "representative," the determination becomes clear because it depends solely on the cities' votes to appoint or remove a director.[46]

Defendant also relies on Water Code section 71267, subdivision (c)(2)(B), which provides, "The appointment of directors . . . shall not result in any of the following: . . . . The appointment of three directors that are all employed by or representatives of entities that are all cities."[47]  He argues that this provision shows that the Legislature intended "that the cities will have a director of their own, something that would not result if any individual who otherwise is qualified could be nominated in the city category."  However, subdivision (c)(2) simply promotes the board's accountability to a greater range of stakeholders by preventing the three appointed directors from all being employees or representatives of the same type of water purveyor—all of cities,[48] or all of large or small water purveyors.[49]  It sheds no more light on the meaning of "representative of a city" in Water Code section 71267, subdivision (f)(2).

Our analysis indicates that there are substantial questions of law and fact as to the legality of the procedure by which Defendant was appointed as a director of the District, and that these questions warrant a judicial resolution.  We therefore turn to the third and final inquiry, whether it would be in the public interest to grant the application.

### 3.    It Will Serve the Public Interest to Allow the Lawsuit to Proceed

Absent countervailing circumstances not present in this case, we ordinarily view the need for judicial resolution of a substantial question of law or fact as an adequate "public

---

[45] See *One Star, Inc. v. Staar Surgical Co.* (2009) 179 Cal.App.4th 1082, 1094-1095.

[46] Cf. Wat. Code App., § 45-6, subd. (c) (the board of directors of the County Water Authority consists of representatives appointed for six-year terms by the constituent public agencies, and these representatives "serve at the will of the governing body of the public agency from which the member is appointed and may be removed by a majority vote of the governing body without a showing of good cause").

[47] Wat. Code, § 71267, subd. (c)(2)(B).

[48] Wat. Code, § 71267, subd. (c)(2)(B) (cities).

[49] Wat. Code, § 71267, subd. (c)(2)(A) (large water purveyors), (c)(2)(C) (small water purveyors).

11

17-902

purpose" to warrant granting leave to sue.[50]  In addition, here, we find a specific public interest in ensuring correct and consistent evaluations of the qualifications for appointed District directors.[51]  As we have explained, the constituents and board of a special district "have mutual interests in a judicial resolution regarding the procedures to be followed in making appointments to the Board."[52]  Accordingly, for the reasons discussed above, the City's application for leave to sue in quo warranto is GRANTED.

*****

---

[50] 98 Ops.Cal.Atty.Gen. 94, 101 (2015).  Contrary to Defendant's assertion, we find that the City did not unreasonably delay in challenging Dr. Gomez's appointment.  Only about two months elapsed between the District's final denial of the City's challenge to the appointment and the City's mandate-petition in superior court, and then six weeks between the court's leave to amend to obtain the Attorney General's consent to proceed in quo warranto and the City's submission of the quo-warranto application.

[51] See 98 Ops.Cal.Atty.Gen., *supra*, at p. 93 ("allowing this action to proceed would serve the overall public interest in ensuring the integrity of public office and in the qualifications of their officials," internal quotation marks omitted).

[52] 84 Ops.Cal.Atty.Gen. 135, 139 (2001).